## MILLVILLE WATER COMPANY v. CITY OF MILLVILLE.

Submitted March 5, 1914—Decided June 23, 1914.

In 1879 the city of Millville agreed with the Millville Water Company that if the company would erect a plant and do all things necessary to supply the city with water the city would take such supply, and would annually in compensation therefor exempt the water company "from the payment of all taxes except those levied for state and county purposes." In 1912, in violation of this agreement, the city having received its water-supply, compelled the water company to pay the tax due to the city for that year.

Thereupon the water company sued the city for the price of the water so furnished, fixing in its complaint such price as the amount of the tax so paid. On a motion to strike out this complaint on the ground that the agreement to exempt from payment of taxes was void as against public policy—*Held*, that as between these contracting parties the true construction of the agreement was that the city would pay for the annual supply of water furnished to it by the water company a sum equal to the amount of the tax payable for that year by the water company to the city. *Held, also*, that if a complaint suggests an untenable or erroneous measure of damage, it is no ground for striking it out.

On motion to strike out a complaint.

Before Justices GARRISON, SWAYZE and BERGEN.

For the motion, *Louis H. Miller.*

*Contra, Gaskill & Gaskill.*

The opinion of the court was delivered by

GARRISON, J.   This is a motion to strike out a complaint. The action is brought by the water company to recover $1,988.27 for water furnished to the city for the year 1912. The allegations of the complaint are—*first*, that the city is indebted for water furnished under a contract that is annexed to the complaint which shows that part of the consideration to be paid by the city for an annual supply of water was the annual exemption of the water company from the payment of all taxes except those levied for state or county purposes; *second*, that the water was furnished for 1912, but the city did not exempt the plaintiff from the payment of the annual city tax for that year which the plaintiff in due course paid; *third*, that the sum of $1,988.27 demanded for the water supplied is the amount of the tax so paid by the plaintiff.

The main ground urged by the defendant's counsel for striking out this complaint is that the agreement of the city to exempt the plaintiff from the payment of taxes that might be due to the city was *ultra vires*, against public policy and void.

If the parties to this contract be looked upon only as a taxing power and a taxpayer there is much force in this contention. Such, however, is not the attitude of the parties to this contract, and was not, in 1879, when the city entered into it, to induce a newly-formed water company to erect a plant and to do all other things necessary to supply the city with water.

Having succeeded in this object, and having for thirty-five years enjoyed the performance of this agreement on the part of the plaintiff, the defendant ought not now to be allowed to put a construction on its contract that will defeat its true intent if any other construction is at once consistent with the meaning of the words employed and the obvious intent that the parties had in mind. We think that there is such a construction.

These were contracting parties; their object was that the company should furnish an annual supply of water to the city and that the city should make an annual compensation therefor to the company. As the increased supply from time to time would go hand in hand with a like increase in taxes, the compensation agreed upon was not a fixed and stationary sum, but a flexible one, to wit, the amount of the annual tax due to the city. That this was the compact is plain, and had the contract said, "a sum equal to the amount of taxes," &c., there could have been no contest over the meaning or legality of such an agreement. In my judgment, the words employed do not prevent our giving to them this meaning which the parties evidently had in mind, notwithstanding that the other meaning is on the mere face of the contract the more plausible.

We have, however, more than the mere face to consider; we have, first, the situation of the parties and what they were both striving to accomplish; second, we have the presumption that the city was acting honestly and meant to live up to the consideration it was holding out to the company; thirdly, we have the criterion that the agreement was between *contracting* parties and not between a taxing power and a subject of taxation acting in that capacity, and lastly, we have

the practical construction placed on the meaning and intent of this contract by both parties for a period of thirty-five years.

During all of these years the city has said annually to the company, "Our understanding of our agreement is that each year we are to pay you for water the precise sum that we require you to pay us for taxes."

This was the meaning of the bargain when made and would still, under non-litigious conditions, continue to be its meaning to all fair-minded people, hence, in our opinion, the complaint should not be stricken out.

As to the measure of damages, it has no necessary place in a complaint, and hence, if the rule suggested is untenable, or even erroneous, it is no ground for striking out the complaint.